IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LISA REYES, §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>TEXAS HEALTH & HUMAN SERVICES §<br>COMMISSION, §<br>§<br>*Defendant*. § | Civil Action No.  SA-12-CV-907-XR |

### ORDER

On this day the Court considered Defendant's motion for summary judgment. Doc. No. 20.  After careful consideration, the Court GRANTS the motion.

### BACKGROUND

This case arises out of Plaintiff Lisa Reyes's employment relationship with Defendant Texas Health & Human Services Commission ("HHSC").  From January 5, 2009, until her termination on May 25, 2011, Ms. Reyes worked as a Texas Work Advisor in the Office of Eligibility Services ("OES") at HHSC.  Ms. Reyes's primary responsibility was to review applications for state and federal benefit programs administered by HHSC.  These include the Supplemental Nutrition Assistance Program, the Temporary Assistance for Needy Families program, and Medicaid.  Of specific relevance to this case, Ms. Reyes was responsible for adjudicating applications for Medicaid benefits for pregnant women, known as "TP-40" benefits.

Ms. Reyes's has a daughter with disabilities who receives regular therapy. This led Ms. Reyes to request a modified work schedule. Due to the nature of their work, HHSC Work Advisors are generally not permitted to work flexible schedules, although individual managers retain discretion to make reasonable accommodations. Reyes Dep. at 33. Ms. Reyes initially worked under Ms. Maria Hernandez at OES. Although Work Advisors are expected to report by 8:00 A.M. to begin client interviews, Ms. Hernandez allowed Ms. Reyes to come in at either 8:15 A.M. or 8:30 A.M. Nevertheless, this work schedule was not acceptable to Ms. Reyes and she filed an administrative grievance on October 11, 2010. This grievance was resolved when Ms. Reyes was transferred to the supervision of Ms. Phyllis Scott in November, 2010. Ms. Scott was notified of Ms. Reyes' FMLA request for a modified work schedule. The relationship between Ms. Reyes and Scott was initially smooth, but deteriorated in the first months of 2011. Reyes Dep. at 47. Ms. Scott alleges that, despite her efforts to accommodate Ms. Reyes, she would come in late and accomplish less than her coworkers. Doc. No. 20, Ex. 3 at ¶ 3. Ms. Reyes contends that during February 2011 she considered filing a second grievance, but decided against doing so.

Since 2007, Ms. Reyes had been working intermittently as a bartender and waitress at the Cabo Tiki Lounge Bar and Grille ("Cabo"). While she worked at HHSC under Ms. Scott's supervision, Ms. Reyes also worked at Cabo every weekend and also sporadically during the week. Ms. Reyes argues that her job at Cabo never interfered with her performance at HHSC. Reyes Dep. at 118. In January 2011, Ms. Reyes discovered that she had become pregnant. At some point thereafter, she submitted her own application for TP-40 benefits. It is undisputed that Ms. Reyes's TP-40 application did not disclose any income from a second job at Cabo. Ms.

Reyes's colleague, Ms. Mary Ann Esquivel, processed Ms. Reyes's TP-40 application. When Ms. Esquivel noticed that the application had been filed by a fellow HHSC employee, she followed protocol and forwarded the application to Ms. Scott. Ms. Scott, who knew that Ms. Reyes worked a second job, became suspicious that the TP-40 application omitted this secondary source of income. Ms. Scott confronted Ms. Reyes about this discrepancy and subsequently concluded that disciplinary measures were appropriate. On May 5, 2011, Ms. Scott met with her own supervisor, Ms. Lynne Moore, along with Ms. Grace Moser, the Regional Director of OES, to discuss discipline for Ms. Reyes. Ms. Scott claims that she initially recommended a reprimand and not dismissal. However, Ms. Reyes contends that Ms. Scott always had recommended that she be dismissed for falsifying information on her TP-40 application. Regardless, it appears undisputed that at the May 5 meeting Ms. Moser decided to terminate, subject to Ms. Reyes being given a chance to respond. Doc. No. 20, Ex. 2. On May 6, 2011, Ms. Reyes was placed on leave and given an opportunity to respond to the charges against her. After reviewing her response and consulting with Ms. Scott and Ms. Moore, Ms. Moser officially terminated Ms. Reyes effective May 25, 2011.

On September 26, 2012, Ms. Reyes filed an original complaint alleging that HHSC violated the Family and Medical Leave Act ("FMLA") by terminating her in retaliation for working under a modified schedule to care for her disabled daughter. On September 23, 2013, HHSC filed this motion for summary judgment. Doc. No. 20. On October 22, 2013, this case was transferred to this Court. Doc. No. 31.

**LEGAL STANDARD**

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

**DISCUSSION**

Ms. Reyes's only claim is that she was terminated in retaliation for engaging in protected FMLA activity. The FMLA entitles employees to take reasonable leave for medical reasons, either for themselves or their family members. 29 U.S.C. § 2601(b)(2). Additionally, the Act prohibits employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the Act. 29 U.S.C. § 2615(a)(2). The Department of Labor has interpreted this statutory provision to forbid employers from

terminating employees for having exercised or attempted to exercise FMLA rights. 29 C.F.R. § 825.220(c).

When a plaintiff does not produce direct evidence of discrimination, courts use the *McDonnell Douglas* burden shifting framework in FMLA cases. *Lorentz v. Alcon Labs., Inc.*, 13-20049, 2013 WL 3368987 (5th Cir. July 8, 2013) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768-69 (5th Cir. 2001). Under this framework, Ms. Reyes bears the initial burden of establishing a prima facie case. If she does so, HHSC must articulate a legitimate, non-discriminatory reason for Ms. Reyes's termination. If HHSC does so, then the burden shifts back to Ms. Reyes to establish by a preponderance of evidence that HHSC's proffered reason is a pretext for discrimination. *Id.* Alternatively, Ms. Reyes can avoid summary judgment by showing by a preponderance of the evidence that "the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Ion v. Chevron USA, Inc.*, 731 F.3d. 379 (5th Cir. 2013); *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (Mixed-motive framework applies to FMLA cases).[1] If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. The employer's final burden "is effectively that of proving an affirmative defense." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

---

[1] The continued applicability of the mixed-motive framework to FMLA cases is questionable following the Supreme Court's recent decisions in *University of Texas Southwestern Medical Center v. Nassar*, ––– U.S. ––––, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, (2009). In these cases, the Supreme Court held that plaintiffs in Title VII and ADEA cases must prove "but-for" causation. In a recent case, the Fifth Circuit expressly left open the question of whether Nasser applied to FMLA claims. *Ion v. Chevron USA, Inc.*, 731 F.3d. 379 (5th Cir. 2013) When the Fifth Circuit adopted a mixed-motive approach for FMLA claims, the stated logic was to make the causation standard consistent across anti-discrimination laws. *Richardson*, 434 F. 3d. at 333. However, since Ms. Reyes cannot survive summary judgment on the mixed-motive standard, the Court need not apply the more demanding but-for standard at this time.

*a. Prima Facie Case*

To establish a prima facie case of retaliatory termination, a plaintiff must show that: (1) she engaged in a protected activity, (2) the employer discharged her; and (3) there is a causal link between the protected activity and the discharge. *Hunt*, 277 F.3d at 768-69. The parties do not dispute the first two elements. HHSC argues that Ms. Reyes fails to make a prima facie case because she cannot establish a causal link between her protected activity and her termination. Doc. No. 20. Ms. Reyes contends that the close timing between her protected activity and her termination to establishes causation.[2] However, the Court need not resolve this dispute because HHSC has established a legitimate, non-discriminatory reason for the termination and Ms. Reyes has failed to produce evidence of pretext or of discriminatory intent.

*b. Legitimate, Non-Discriminatory Reason*

Assuming, for the sake of argument, that Ms. Reyes has established a prima facie case, HHSC has met its burden of establishing a legitimate, non-discriminatory reason for Ms. Reyes's termination. The evidence shows that Ms. Reyes was suspected of violating HHSC's written employee policy with respect to material omissions on her own Medicaid application. Violating company policy is considered a legitimate, non-discriminatory reason for dismissal. *See, e.g., Arismendiz v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 717 (W.D. Tex. 2008).

Although Ms. Reyes disputes the veracity of the allegations against her, she acknowledges that her supervisors believed that she had failed to disclose her secondary income on her TP-40 application. Reyes. Dep. at 67. It is clear that this Court does not need to find that underlying fraud actually occurred for the suspicion thereof to be a legitimate, non-

---

[2] "Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

discriminatory reason. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason."). All relevant decision-makers believed that Ms. Reyes had omitted material information on her TP-40 application. This fact is established by Plaintiff's own summary judgment evidence. The email Ms. Moore sent Ms. Moser on May 11, 2011, indicates, "we looked at the letter, and is (sic) supports the fact that she was employed [at Cabo] at the time of the application." Doc. No. 23, Ex. 9. Thus, the evidence shows that HHSC believed that Ms. Reyes was working at Cabo and failed to disclose that secondary income on her TP-40. Plaintiff's own evidence establishes that HHSC conducted an investigation into whether or not she was receiving secondary income at the time of her application, and made a reasonable conclusion that she had in fact engaged in misconduct. Accordingly, the Court finds that HHSC had a legitimate, non-discriminatory reason to terminate Ms. Reyes.

  c. *Pretext*

Next, the burden shifts to Ms. Reyes to establish by a preponderance of the evidence that the decision to terminate was a pretext for discrimination. A plaintiff can show pretext by showing that the reasons given for management's actions are simply not believable." *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Ms. Reyes contends that HHSC's suspicion of fraud is not believable because she did not technically engage in any fraud. On this point, Ms. Reyes claims that she submitted her TP-40 application in January, 2011, when Cabo was closed and she was not

receiving any secondary income. Therefore, she argues that her application was correct because she had no secondary income to report.[3]

Here, Ms. Reyes attempts to conflate the argument that she was factually innocent with the argument that the allegations were so unreasonable that they must have been a pretext for discrimination. However, the only evidence Ms. Reyes has as to her actual innocence is her own testimony. Moreover, there is ample evidence in the record showing that HHSC could (and did) reasonably believe that Ms. Reyes omitted income from her second job on her TP-40. The physical evidence shows that the application was submitted in March, not January as Ms. Reyes alleges.[4] Notably, the TP-40 application itself bears the date of "3/3/11." Doc. No. 20, Ex. 4. Similarly, the HHSC computer tracking software indicates that Ms. Reyes's TP-40 was received on that same date in March. Most harmful to Ms. Reyes is the fact that her own rebuttal letter references "my application for pregnancy Medicaid March 3, 2011." Doc. No. 20, Ex. 7. The only evidence that Ms. Reyes has that the TP-40 application was submitted in January is her own self-serving testimony to that effect. Against the weight of contrary evidence, including her own contradictory statements, this testimony is insufficient to raise a genuine issue of material fact as to pretext.[5]

Finally, Ms. Reyes argues pretext on the grounds that there were two other individuals who received more favorable treatment. It is settled that pretext may be established through evidence of disparate treatment. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Ms. Reyes identifies two employees that

---

[3] Notably, even if this is true, Ms. Reyes admits that she failed to update her application in February when she returned to work at Cabo.

[4] It is undisputed that Ms. Reyes was receiving income from Cabo in March.

[5] The dispute over whether Ms. Reyes actually committed fraud does not create a material fact issue. Courts do not second-guess the merits of employment decisions. *Walton v. Bisco Industries, Inc*., 119 F.3d 368, 372 (5th Cir. 1997). Therefore, the Court need not determine whether HHSC was factually correct in their suspicion that Ms. Reyes had failed to disclose her secondary income.

she claims received more favorable treatment: (1) Ms. Alicia Diaz; and (2) Ms. Yolanda Torres. Ms. Reyes appears to admit in her deposition that Ms. Torres was also terminated after being suspected of submitting false information on a benefits application. Reyes. Dep. at 185-186. Because she was also terminated, Ms. Torres did not receive more favorable treatment.

Similarly, Ms. Diaz cannot serve as a comparator. Ms. Diaz also submitted a false benefits application and received a Level III warning, the highest reprimand short of dismissal. Unlike Ms. Reyes, Ms. Diaz corrected her mistake and voluntarily admitted her wrong doing immediately after filing her application. In contrast, the evidence shows that part of what motivated Ms. Moser to terminate Ms. Reyes was the fact that she never took responsibility for her actions. Moser. Decl. at ¶ 7. Crucially, Ms. Diaz also took FLMA leave and therefore is not a suitable comparator. Since Ms. Diaz also engaged in protected activity, the fact that she was not terminated does not support an inference that HHSC was retaliating against Ms. Reyes for her FMLA activity when they terminated her employment. Ms. Reyes has failed to establish by a preponderance of the evidence that her termination for suspicion of falsifying information on a Medicaid application was a pretext for discrimination.

    d. *Mixed-Motive*

Ms. Reyes can defeat summary judgment under the mixed-motive framework currently applicable to FMLA cases if she can show that HHSC's suspicion of fraud was just one of the reasons for her termination, another of which was the desire to discriminate. *Richardson,* 434 F.3d at 333. In other words, under a mixed motive standard, Ms. Reyes must prove by a preponderance of evidence that the desire to discriminate was a motivating factor in HHSC's decision to terminate. *Id.* Ms. Reyes cannot meet this burden because she has put forth no

competent evidence showing discriminatory intent. Ms. Reyes has provided numerous internal HHSC emails where the relevant decision-makers discuss the decision to terminate. Notably, not one of these internal emails references, let alone expresses a negative attitude towards, Ms. Reyes's modified work schedule. The only evidence Ms. Reyes has to establish discriminatory intent is the close time gap between the protected activity and the termination. While this may be sufficient to establish a prima facie case, the temporal inference alone is insufficient to establishing that discriminatory intent was a motivating factor in the employer's decision to terminate. *McCoy*, 492 F.3d at 362 (Finding that while timing may be sufficient for a prima facie case, once the employer offers a legitimate, nondiscriminatory reason plaintiff must offer some other evidence from which the jury may infer that retaliation was the real motive). Without any affirmative evidence of retaliatory intent, Plaintiff cannot survive summary judgment.

## CONCLUSION:

In light of the foregoing analysis, there are no genuine issues of material fact to preclude summary judgment. Accordingly, HHSC's motion is GRANTED. Doc. No. 20. The Clerk is directed to CLOSE this case and issue a judgment that Plaintiff take nothing on her claims, which are hereby DISMISSED ON THE MERITS. Defendant is awarded costs of court and shall file a Bill of Costs in accordance with the local rules.

SIGNED this 17th day of December, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE